United States District Court
Southern District of Texas
**ENTERED**
May 19, 2026
Nathan Ochsner, Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| WARD SCHURMAN LARKIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-05133 |
| | § | |
| HARRIS COUNTY, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER

Pending before this Court is Defendants Harris County, Teneshia Hudspeth, in her official capacity as the Harris County Clerk, and John Resat Karpiuk, in his official capacity as the Harris County Precinct 0615 Election Center Judge, (collectively, the "Harris County Defendants") Motion for Reconsideration of Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 31) and Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 36). Plaintiff Ward Schurman Larkin ("Larkin") responded to these Motions. (Doc. Nos. 33, 40). Pending also before this Court are also several pending motions filed by Larkin regarding the claims against Defendant John Resat Karpiuk, in his individual capacity ("Karpiuk"). (Doc. Nos. 35, 38, 43, 47, 48). The Court separately addresses the Motions filed by the Harris County Defendants and the pending matters related to Karpiuk below.

### I.    Factual Background

This is a § 1983 case regarding the alleged failure to accept a United States Passport as voter identification and the alleged failure to provide a provisional ballot. On November 7, 2023, Larkin alleges that he attempted to vote at Precinct 0615 Election Center in Houston, Texas. (Doc. No. 30 at 4). Larkin alleges that he presented his passport and his Harris County Voter Registration

Certificate as proof of identity, but the election clerks "repeatedly told him that he was not registered to vote." (*Id.*). After several attempts to explain that his passport was a valid form of identification, the Presiding Election Judge, Defendant Karpiuk, told Larkin that he would not be able to vote and "did not offer him a provisional ballot." (*Id.* at 5). After Larkin left the polling location, he alleges that he "contacted the Harris County Clerk's Office, the Texas Secretary of State, and his State Representative." (*Id.*). According to Larkin, the "Clerk's Office staff instructed [him] to return later and assured him that his right to vote would be honored." (*Id.*).

Larkin alleges that he returned to the same polling location later that evening, but when he arrived "Defendant Karpiuk immediately threatened [him] with arrest for trespassing if he did not leave and forced [him] to exist the Election Center." (*Id.*). Larkin alleges that "[t]he Harris County Clerk's Office contacted law enforcement regarding the incident," and an officer arrived at the scene. (*Id.* at 6). Larkin alleges that he then went to a different polling location, and that "two election clerks again refused to accept [his] United States Passport and demanded a Texas Driver License." (*Id.*). Larkin alleges that he "was allowed to vote only after the Presiding Election Judge personally intervened and overrode the clerks' refusal." (*Id.*).

On October 28, 2025, Larkin filed claims against Harris County, Teneshia Hudspeth, in her official capacity as the Harris County Clerk, and John Resat Karpiuk, both in his official capacity as Harris County Election Center Judge and in his individual capacity. (Doc. No. 1, 30). Larkin brought §1983 claims against the Defendants for the alleged violations of the First and Fourteenth Amendments based on his inability to vote at the Precinct 0615 Election Center. For the claims against the Harris County Defendants, Larkin requests "[d]eclaratory relief that Defendants' policies, customs, and practices violated [his] constitutional rights" and "[i]njunctive relief requiring adequate training, supervision, and enforcement of PhotoID [*sic*] and provisional-ballot

2

procedures." (Doc. No. 30 at 12). For the claims against Karpiuk, in his individual capacity, Larkin seeks compensatory damages "for emotional distress and constitutional injury" and punitive damages "for willful and reckless misconduct." (*Id.*). The Court considers the claims below.

## II.    The Claims Against the Harris County Defendants

The Harris County Defendants, including Harris County, Teneshia Hedspeth, in her official capacity as the Harris County Clerk, and John Resat Karpiuk, in his official capacity as Harris County Election Center Judge, filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (Doc. No. 36). The Harris County Defendants argue, among other theories that the Court need not address in this Order, that this case should be dismissed under Rule 12(b)(1) because Larkin does not satisfy the requirements for Article III standing. The Court agrees.

A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. CONST. art. III, § 2, cl. 1. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

---

[1] While the Motion to Dismiss is titled "Defendants Harris County and Harris County Clerk Teneshia Hudspeth's Motion to Dismiss Plaintiff's Second Amended Complaint," the Motion clarifies that "[t]o the extent Plaintiff's claims against Karpiuk in his official capacity could be treated as claims against the County, those claims should be dismissed for the same reasons." (Doc. No. 36 at 6 n.1).

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, "a plaintiff must show: (i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61). "As the party invoking federal jurisdiction," Larkin "bear[s] the burden of demonstrating" standing to bring the claims alleged. *Id.* at 2207.

While the Harris County Defendants challenge all three requirements of Article III standing, the Court focuses on the third element: redressability. Assuming, *arguendo*, that Larkin has sufficiently alleged injury-in-fact and causation to satisfy the first two elements of Article III standing, the Court notes that Larkin is only seeking declaratory and injunctive relief from the Harris County Defendants. Larkin bears the burden to show that this Court can redress such an "injury" through his requested relief. Specifically, Larkin requests "[d]eclaratory relief that Defendants' policies, customs, and practices violated [his] constitutional rights" and "[i]njunctive relief requiring adequate training, supervision, and enforcement of PhotoID [*sic*] and provisional-ballot procedures." (Doc. No. 30 at 12). In *Beaumont Chapter of NAACP v. Jefferson County, Texas*, the United States District Court for the Eastern District of Texas addressed the requirements to show redressability in a voting rights case in which the plaintiff only sought declaratory and injunctive remedies:

> Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). **Because injunctive and declaratory relief "cannot conceivably remedy any past wrong," plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury.** *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). That continuing or threatened future injury, like all injuries supporting Article III standing, must be

4

an injury in fact. *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). **To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical.** *Id.* at 720–21.

The purpose of the requirement that the injury be "imminent" is "to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* at 721 (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)). **For a threatened future injury to satisfy the imminence requirement, there must be at least a "substantial risk" that the injury will occur.** *Id.* (quoting *Susan B. Anthony List*, 573 U.S. at 158); *see also Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010) ("[R]egardless of the existence of an unlawful policy, a plaintiff must show that he is sufficiently likely to be *personally* subjected to the challenged conduct *again* in order to have standing.") (emphasis added). In other words, "past wrongs" do not "themselves amount" to the kind of "real and immediate threat" of future injury "necessary to make out a case or controversy" for a claim seeking only equitable relief. *Mich. Welfare Rights Org. v. Trump*, 600 F. Supp. 3d 85, 108 (D.D.C. 2022).

685 F. Supp. 3d 414, 422-23 (E.D. Tex. 2023) (emphasis added) (cleaned up). Accordingly, as Larkin only seeks declaratory and injunctive relief from the Harris County Defendants, Larkin bears the burden of demonstrating that there is a continuing or threatened future injury sufficient to satisfy the redressability requirement. He fails to do so.

While Larkin does allege that the Harris County Defendants have certain unlawful policies on voter identification requirements, Larkin still "must show that he is sufficiently likely to be *personally* subjected to the challenged conduct *again* in order to have standing." *Chang*, 738 F. Supp. 2d at 90 (relying on *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Larkin argues that there is a "real and immediate risk of recurrence" of the alleged constitutional violation because "[o]n November 4, 2025, at a different Harris County Election Center, an election clerk again refused to accept [his] United States Passport and requested a Texas Driver License. Another clerk had to intervene before [he] was allowed to vote." (Doc. No. 30 at 6-7). He argues that because the alleged violation has already once repeated, he has pleaded sufficient facts to establish

5

redressability. That being said, even taking all well-pleaded allegations as true, as this Court must at this stage of the litigation, Larkin still has not presented alleged sufficient facts to show that there is a "substantial risk" that he will be "injured" in the imminent future. *Clapper*, 568 U.S. at 409. Indeed, "past wrongs" do not amount to the kind of "real and immediate threat" of future injury "necessary to make out a case or controversy" for a claim seeking only equitable relief. *Mich. Welfare Rights Org.*, 600 F. Supp. 3d at 108. Such a claim that this "injury" will imminently reoccur is precisely the type of hypothetical, conjectural injury contemplated by the United States Supreme Court. *Id.* Phrased differently, in order to establish standing in this case, Larkin "would have had not only to allege that he would" have had another similar encounter with clerks at an election center in Harris County but "also to make the incredible assertion" that *all* election clerks in Harris County *always* refuse to accept a passport as voter identification or that Harris County has "ordered or authorized the clerks to act in such a manner." *See Lyons*, 461 U.S. at 106 (holding the same based on other facts). Larkin cannot make such a showing—especially when he was eventually allowed to vote both times.

The Court finds that there is "not a sufficient likelihood" that Larkin "will be personally subjected to" the alleged conduct "in future elections." *Beaumont Chapter of NAACP*, 685 F. Supp. 3d at 425. "Any such allegations are purely conjectural and hypothetical." *Id.* Accordingly, the Court finds that Larkin lacks standing to bring the claims against the Harris County Defendants. The claims against Harris County, Teneshia Hudspeth, in her official capacity, and John Resat Kupiak, in his official capacity, are dismissed with prejudice.

## III.    The Claims Against Defendant John Resat Karpiuk in his Individual Capacity

Finding that Larkin lacks Article III standing to bring the claims for declaratory and injunctive relief against the Harris County Defendants, the Court next turns to the claims against

6

Karpiuk in his individual capacity. Karpiuk has not yet answered this lawsuit, but he has appeared in these proceedings, *pro se*, and filed a request to stay all proceedings for thirty days to allow him to obtain counsel. (Doc. No. 45). Larkin has filed several miscellaneous motions related to his claims against Karpiuk. The Court briefly addresses these motions below.

Larkin filed a Motion for a Temporary Restraining Order and Motion for Preliminary Injunction against Karpiuk. (Doc. No. 35). Larkin alleges that he received certain text communications from Karpiuk related to this litigation, and he requests this Court to issue a no-contact order between him and Karpiuk. (*Id.*). Larkin bears the burden to show "(1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest." *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). The Court need not address each required element to find that the conclusory allegations (which have little, if anything, to do with the underlying lawsuit) fail to satisfy that requirements that this claim has a substantial likelihood of success of the merits or that there will be any injury—let alone *irreparable* injury—to Larkin if this injunction is not granted. The Motion for a Temporary Restraining Order and Motion for Preliminary Injunction against Karpiuk (Doc. No. 35) is **DENIED** without prejudice.[2]

Larkin has also filed several motions related to effectuating service on Karpiuk, including a Motion for Leave (Doc. No. 38), Motion for Entry of Default (Doc. No. 43), and Motion for Leave to Amend Proof of Service (Doc. No. 47). Given that Karpiuk has now appeared in this lawsuit by filing his request for a stay, the Court **DENIES** the Motion for Leave to Effect Service

---

[2] The Court notes that Larkin is appearing *pro se* and, to date, Karpiuk is appearing *pro se*. As long as that is the case, Larkin and Karpiuk must have some level of contact with each other. The Court admonishes both individuals to maintain a respectful and proper tone in these communications.

7

(Doc. No. 38) and Motion for Entry of Default (Doc. No. 43). The Court **GRANTS** Larkin's Motion for Leave to File to Amend Proof of Service (Doc. No. 47). If Larkin believes that some information on the Proof of Service is incorrect, he is free to file a Notice with the Court.

Although Karpiuk has appeared in the lawsuit, he has not yet answered the lawsuit. Acknowledging that Karpiuk may have been under the impression that he was represented by Harris County, the Court **GRANTS** his request for a brief stay on the case while he seeks to retain legal counsel. (Doc. No. 44). The Court extends Karpiuk's deadline to answer this lawsuit under the Federal Rules of Civil Procedure until **June 26, 2026.** Karpiuk must answer the Second Amended Complaint by this date regardless of whether he has hired an attorney or not. No other filings in this case will be entertained by the Court until the deadline has passed. After June 26, 2026, the Court will proceed to consider any motion that is filed.

Lastly, Larkin has requested the Court for permission to register for CM/ECF electronic filing. (Doc. No. 48). This request is **GRANTED** and will be addressed in a separate order.

### IV.    Conclusion

For the foregoing reasons, the Harris County Defendants' Motion for Reconsideration (Doc. No. 31) is **DENIED,** Larkin's Motion for Temporary Restraining Order (Doc. No. 35) is **DENIED,** the Harris County Defendants' Motion to Dismiss (Doc. No. 36) is **GRANTED,** Larkin's Motion for Leave to Effect Service (Doc. No. 38) is **DENIED,** Larkin's Motion for Entry of Default (Doc. No. 43) is **DENIED,** Larkin's Motion for Leave to Amend Proof of Service (Doc. No. 47) is **DENIED,** and Larkin's Motion for Leave to Register for CM/ECF Electronic Filing (Doc. No. 48) is **GRANTED.** Accordingly, the claims against Harris County, Teneshia Hudspeth, in her official capacity, and John Resat Karpiuk, in his official capacity, are **DISMISSED WITH PREJUDICE**. The claims against John Resat Karpiuk, in his individual capacity, remain live. This

8

case is stayed until **June 26, 2026.** No filings will be entertained by the Court until that deadline

has passed.

It is so ordered.

Signed on this the ___19th___ day of May 2026.

Andrew S. Hanen
United States District Judge